Next case on the calendar is Medley v. Garland. We have Mr. Brewer for the appellant. Yes, Your Honor. Good morning. Good morning. You have two minutes in rebuttal. You can begin whenever you're ready. Thank you. Good morning again, Your Honors, and may it please the Court. My name is Ryan Brewer, and I am appearing on behalf of the petitioner. ICE arrested Mr. Medley in a convenience store in front of his wife and newborn child with his arm heavily bandaged and dangling limp. In the course of his arrest, interrogation, and jailing, ICE officers shoved Mr. Medley and squeezed his bandaged area, causing him to visibly bleed through his surgical bandages. There's a real dispute as to the facts as to what happened. The government has a completely different version of the events. What do we do with that at this point? Yes, Your Honor. In the face of Mr. Medley's detailed and reliable assertions that are sworn statements that he entered into court under oath, in the face of that evidence that was provided by the petitioner, the government provided in response generalized boilerplate assertions in a form I-213 that were not sworn and don't meaningfully contradict that evidence. We believe that the evidence as provided is sufficient to establish that termination without prejudices. The agency never weighed the I-213 versus your client's version of events because it concluded, which you believe was erroneous, that egregiousness wasn't a grounds for termination unless there was prejudice. So the agency never even weighed those things. Correct, Your Honor. Based on the agency's misapprehension of this court's precedence, it did not engage in an explicit fact-finding process  that prejudice was required and that independent Your argument is that if you have egregiousness, that even without prejudice, the proceeding should be terminated? Yes, Your Honor. That is the precedent of this court and has been I'm not so sure that it's clear. I mean, you've got that or, and what does or really mean? What do you do with the argument that we have a summary order? It's a summary order, but that reads it a little bit differently and interprets Lopez Mendoza to say that we need prejudice even with egregiousness. Excuse me, I'm not familiar. The summary order? We have a summary order. Al Naham versus Holder in 2010. Which, it's a summary order, granted, but it does suggest interpreting the Supreme Court's decision in Lopez Mendoza that even with egregiousness, you must show prejudice for the proceedings to be terminated. Yes, Your Honor. Regarding Al Naham, that case does not expressly indicate, well, it does not expressly require a showing of prejudice. There's an implication, however, it's unclear. Why is its interpretation of Lopez Mendoza wrong? Well, Your Honor, again, I would assert that, in fact, in that case, despite indicating that there was no prejudice present, the court nevertheless continued on in its analysis to evaluate egregiousness, and so that in and of itself is an indication that that is not necessarily inherently a requirement. The court wouldn't have cause to engage in any further analysis were prejudice to be a threshold issue that were required. Let's assume we're riding on a clean slate. Why shouldn't we require prejudice? Well, Your Honor, because an agency's duty to abide by its own rules and regulations is at its utmost, particularly in the context of proceedings that are as grave as these involving the deportation of individuals. That's been recognized going back all the way to the 50s and prior to that by the Supreme Court, and for over 30 years of precedent in this court as well. Prejudice, when there are violations by an agency of its own rules and regulations that are so egregious as to shock the conscience, those concerns of imposing this burden upon the agency is- The idea would be a deterrence? Is that the idea, that it would be a deterrence? Determination would be without prejudice, so if the agency- Let's say we remand this to the agency. They found it to be egregious. Your client has conceded removability, so there wouldn't need to be another- There wouldn't need to be a hearing, right, if they had to redo it? What would happen? Well, again, while the Raja court did recognize that there could be, in the case of harmless and non-egregious violations, there would be situations where it would just be a pointless windfall to a non-citizen litigant, and it would potentially bring in concerns about serial litigation and things of that nature. In the case of egregiousness, egregious violations, those concerns are outweighed by- We didn't say that termination would be with prejudice. We wouldn't say that your client, if there was egregiousness, would get to remain in the United States. We didn't say that in Raja, right? Right. In Raja, the court contemplated- Termination without prejudice. Yeah, they indicated- If it was egregiousness. Yes. Yes, Your Honor. Explain to me what would happen if egregiousness were found. What would happen? In the case- As a practical matter, what would happen? The agency would say, look, he's conceded removability. This is over, right? There's not going to be a hearing or anything, right? In the case of egregious violations, if we're the court to find that, in that case, termination without prejudice would be appropriate. Now, the fact that there is independent evidence of removability is irrelevant to the matter, and it's a separate remedy that Raja created, independent from the suppression remedy. My point is, how much deterrence is there if the agency- We're going to have litigation about egregiousness, which could result in hearings over a circumstance of arrest, and if the petitioner prevails, there's no additional burden the agency is going to have to bear, other than to say, look, he's conceded removability. This is over, right? Or am I missing something? What's the punishment to the agency by sending it back without prejudice? Yes, well, Your Honor, as the court in Raja recognized, the burden on the agency of terminating without prejudice is nevertheless significant, and this Ninth Circuit in Sanchez, which adopted and reaffirmed Raja, similarly indicated that it is a significant burden to place upon an agency to force it to start over and to operate on a clean slate, absent the violations previously committed by the agency. Moreover, it's also potentially the passage of- Wouldn't your panels have the ability to bring potentially a civil action with respect to this? In this case? Yeah. As to civil action, Your Honor, that's- In terms of deterrence, wouldn't that be a deterrence, a civil action? Potentially. George, doesn't he have the remedy of bringing a Bivens suit for damages, and isn't that a more appropriate method than giving him what arguably is a windfall with a without prejudice termination? Well, Your Honor, respectfully, this is the claim that resulted from the agency's violations and their mistreatment of Mr. Medley in the course of their arrest and interrogation and detention. The removal proceedings that resulted from those actions should be terminated as a remedy for that misconduct on the part of the agency. All right. Thank you. You deserve three minutes for rebuttal. We'll hear from the government, Mr. Remnitz. May it please the Court, Your Honor, Sam Remnitz on behalf of the United States Attorney General. In this immigration case, the agency reasonably denied Petitioner's motion to terminate, claiming egregious violations occurred during his December 20, 2017, arrest by Immigration and Customs Enforcement. First and foremost, this is not a suppression case. Petitioner is not claiming any unlawful evidence was obtained as a result of this arrest or any incriminating statement. What he is seeking is a remedy under this court's decision in Raja for simply termination without prejudice for a redo. What distinguishes this case from Raja is that there is independent evidence in this case. And I think... Under what Raja set a standard, we hold that pretrial regulatory violations are not grounds for termination absent prejudice that may have affected the outcome of the proceeding, conscious shocking conduct or egregiousness, or a deprivation of fundamental rights. And you can correct me if I'm wrong, but I think you're telling us, don't read that as an or, even though it says or, that it should be an and. Isn't that the government's essentially position? That is not the government's position. Okay, explain it to me. I believe... I think we need to change that from an or to an and to... Yes, I'm at fault for that misunderstanding because I didn't... I muddled the language in the government's answering brief. When I talk about prejudice, what I mean is independent evidence. So you can have prejudice arising from regulatory violation under Raja. Or you can have egregious conduct arising from regulatory violation under Raja. That would result in a termination without prejudice as a remedy. But what Raja doesn't have an occasion to address is the independent evidence rule under Lopez-Mendoza. Because there wasn't independent evidence in Raja. As the court clearly states... Are you agreeing that Raja says if you have egregiousness, you don't need prejudice? I agree with that, yes. Okay. But what the government muddles in their brief is that we keep saying... I keep saying prejudice. But what we mean is there's no prejudice because there's independent evidence. And we get to that in page 31. We say there's independent evidence of removability in this case that preexisted the arrest and postdated the arrest. And that's what the board is citing to when it cites this court's precedent in Venegas-Ramirez. When there is independent evidence under how this court has looked at Lopez-Mendoza that's attenuated from the arrest, has nothing to do with the arrest... I'm having a hard time understanding the difference between a lack of prejudice and independent evidence. Isn't the argument there is a lack of prejudice here because there is independent evidence? Yes. I believe they both are intertwined, but I think it's more clear to say that independent evidence removes this case from Raja. Because Raja talks about prejudice resulting from the regulatory violations themselves. Okay, but the cases don't make this distinction you're making to us. We didn't make that type of distinction in Raja. We cited the same language in Maldonado. And in that summary order, I think Mr. Brewer is right. We cited that same language from Raja in the summary order. And then even though there was no prejudice, then looked separately at egregiousness. And then the Ninth Circuit in Sanchez said we agree with Raja and also found that egregiousness was a separate grounds for determination. That's correct. So if we would adopt what you're suggesting here, I don't know that that's consistent with Raja. Certainly I don't think it's consistent with the way the Ninth Circuit has interpreted Raja. It's consistent with Raja because Raja talks about prejudice resulting from the regulatory violations. So this is the NCRS program, and same with the summary order. It was the NCRS program. So when petitioners were called to come in to interview at Federal Plaza downtown, they brought with them the documentation and gave statements that ultimately resulted in their removability. And so they had no occasion to look at independent evidence as the court has looked at other cases. So your position, the government's position would be under Raja, no matter how egregious the violation was based upon race, you know, we could create the worst possible set of facts. The government's position is as long as they're independent evidence of removability, non-actionable under Raja? That's correct, and that is exactly what the Supreme Court said in Lopez Mendoza when they talk about egregiousness with Rochin about the case where the police gave an anemone to a suspect in a hospital to make him throw up the evidence. And they say maybe in a case of egregious conduct, there would be grounds for a remedy. But, and this is what the court quotes in the Menegas-Ramirez, which the board cites, it says proof of alienation will sometimes be possible nonetheless using evidence gathered independently of or sufficiently attenuated from the original arrest. So the independent evidence rule is always part of this calculus. It just wasn't needed in Raja, there was no independent evidence. It wasn't needed in Maldonado, there was no independent evidence. But, in every other Fourth or Fifth Amendment case, they look at independent evidence because it could pre-exist the arrest like it did here. There was an administrative warrant issued in September 2017, months before this arrest occurred. They already had the evidence that showed probable cause he overstayed his visa. This is the same evidence submitted in removal proceedings. So there was pre-existing independent evidence of his removability. So if we assume that the events transpired as he alleged in his affidavit, what remedy is there? He has no remedy. No remedy. There's independent evidence. And that's exactly what the court says about egregious conduct in Los Pesos, Mendoza. And not only was there independent evidence pre-dating the arrest, there's independent evidence post-dating the arrest. And that's why, again, the board cites Menegas-Ramirez, where they talk about egregious Fourth Amendment or Fifth Amendment violations. But they said that when the petitioner has subsequently conceded removability, again, there's no remedy. Because they don't have any obligation to concede removability. But if they do so, they have self-created independent evidence in that there. So we have independent evidence pre-dating the arrest, the probable cause of the overstay. We have independent evidence post-dating the arrest. And that obviates any remedy for an egregious violation. Can you answer the question I asked your adversary about if there were, if we were to interpret it differently and send it back to the agency, if the agency found egregiousness under Raja that required termination without prejudice, what would happen then? Nothing different would happen. That's why it's not the appropriate remedy when there's independent evidence because- When you say nothing different would happen, the government would just say in the new proceeding, he's conceded removability, game over. Well, he could retract that concession most likely. However, we still have the evidence that led to his administrative warrant pre-dating the arrest. The evidence of his overstay that was submitted into the record. I mean, that's why he conceded removability most likely because the evidence was already there. He couldn't do anything about it. And so the same thing would happen. That evidence comes in. He's removable. He's ineligible for relief. Nothing changes. I know, but the idea of Raja potentially and Sanchez in the Ninth Circuit is that even nothing different may happen. Just putting the government through, if he withdraws his concession, the government has to go through some type of proceeding or hearing, that that will operate as some deterrent to prevent egregious conduct by law enforcement. I think that's a pretty sweeping remedy for just having something like that where there's just no difference happening in the remanded proceedings. And also Sanchez, for example, there wasn't independent evidence there either. So Sanchez talks about in removal proceedings the government sought to introduce records from UCIS that they had. And they said, well, that was still this whole, his removability was tainted from the inception because the racial profiling allegedly occurred. That's what put him in proceedings. And here we don't have that. What put him in proceedings was an arrest warrant issued months before his arrest based on evidence of his overstay. So it's even distinguishable from Sanchez. There is no illegality from that arrest that had any effect on his proceedings. If we were to disagree with that interpretation of Raja, shouldn't this have to be sent back for the agency to determine then whether or not there is the conflict between the form and his testimony? Wouldn't that be the appropriate remedy? I think that's the most appropriate remedy would be for fact finding uncertain on egregiousness because we have the form I-213 which contradicts many of the things he says. But what the government is suggesting, the futility argument was actually taken from Raja as well because as Raja goes through the alleged regulatory violations, I believe it gets to arrest without a warrant or one of those. And it looks as if there's no fact finding by the board, but we're going to just assume it's as Petitioner portrays it and we find no egregiousness for this particular violation. So the court has precedent where it can look at these facts and still find no egregiousness possible and just decide the case on that basis. And assuming the facts as Petitioner portrays them, because even assuming everything in his affidavit is true, he still doesn't show anything close to rising to the level of egregious conduct. I think at this point he's abandoned all regulatory violations except for unnecessary force. Well, in your brief you went one by one and cited some cases saying that this isn't sufficiently egregious. But the law is you look at them cumulatively, not one by one. It may be that each one of these things might not rise to the level of egregiousness, but their argument is that it should be considered by the agency cumulatively. And I think that is the law. That's their argument. And that's the law. And the government's position would be essentially 0 plus 0 still equals 0. None of these alleged violations were egregious, so how do they add up to egregiousness? There was no unnecessary force. They manipulated his hands to arrest him. And I think that's the claim of unnecessary force in totem. If you were to draw the inferences in his favor, which is kind of the situation we're in without a hearing, you don't think that adding them all up would be a matter of concern? No. I don't believe, going back to the arrest of the force, he submitted a medical record showing that eight hours prior to his arrest- But the agents didn't know that it was only for the removal of a wart. I mean, the agent saw that his hand was bandaged, was bleeding, and then they tried to put pressure on it, threw away his medication, that kind of thing. Well, they arrested him, and they manipulated his hands to arrest him. I can't imagine that comes to egregiousness, like in Roken, where they're shoving an anemic down someone's throat to get him to vomit. It just doesn't rise to that level. Otherwise, his claim is that at the Federal Plaza he was coerced, but it seems to be a misunderstanding because he says he was- They told him he was going to go in front of an immigration judge, but just to sign something to make it either quicker or happen later. They're never trying to waive his right to an immigration judge, even according to his own affidavit. They want him to sign something, which by all appearances seems to be the NTA, because he has a refuse-to-sign notation. What about the actions with respect to counsel? He wanted to talk to a lawyer, and they weren't allowing him to do that. There were some other details. Well, it seems no interrogation even took place. So there's nothing, no incriminating statements. He says they withheld food and water, but he doesn't remember how long this all occurred, according to his affidavit. So when he doesn't remember how long, all we're left with is the I-213, which says this all took place over an hour and a half. So an hour and a half of being deprived food and water during processing is certainly not egregious. All right. Thank you. Mr. Brewer, you have two minutes in rebuttal. Before you address the argument on this part of your claim, the other part regarding jurisdiction of the court, you would agree, based upon Sherry, which is binding precedent on us, that that would reject that claim. I know when it was briefing, there was potential for it was being heard, and then you said there was rehearing potential, but we're past that now, right? Yes, Your Honor. We acknowledge that this court has ruled on the jurisdictional issue, and Benegas-Gomez and Sherry as well. I don't want to waste your time on that. I would just like to note that there are additional developments at the agency level, including a claims processing challenge that could be addressed on remand, or in this case, to be remanded, but that was not before this court. Regarding the other issues, Your Honor, the government is attempting to rewrite Raja and its interpretation of Sanchez. Lopez-Mendoza is not the right line of cases. This case is not about the exclusionary rule. It stems from an entirely different body of case law dating back to the 1950s and before. There's a wide variety of ways in which this remedy would, in fact, be a deterrent. In Sanchez, the Ninth Circuit, in analyzing Raja, set forth the remedy of termination without prejudice, deeming it to be a significant burden on the agency, but a burden that is necessary in order to allow the parties to return to a clean slate. In Sanchez, the court held, quote, the government cannot simply rely on the existence of untainted evidence to continue with removal proceedings that are tainted from their roots. To permit the government to pick up where it left off would do a great disservice to petitioners. That's Sanchez v. Sessions at Penn site 653 and 655. So the court considered the remedy and balancing the interests of the agency as well as the egregiousness of the violative conduct, held that termination without prejudice is the appropriate remedy. Moreover, DHS might choose not to reinitiate proceedings. That is always something that might occur as an additional benefit. Moreover, the passage of time is significant to applications for removal, as well as specifically things like discretionary determinations, good moral character, and even eligibility for new forms of release. So there is a meaning, there is a purpose to this remedy. In terms of independent evidence of alienage, in Sanchez, the court noted that there was independent evidence of alienage there as well and, nevertheless, terminated without prejudice. It is a separate remedy, and the prejudice requirement is not present. All right. Thank you, both of you. We'll reserve the decision.  Thank you, Your Honor.